FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★  JAN 19 2010
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MOHAMMED SAHARAN BEY,

          Plaintiff,

    – against –

PATROLMAN "RICHARD" ROSE, et al.,

          Defendants.
------------------------------------------------------------- x

**MEMORANDUM and ORDER**

94-CV-2489 (SLT)

**TOWNES, United States District Judge**

    In July 1996, Judge Charles P. Sifton adopted Magistrate Judge Steven M. Gold's recommendation that this civil rights action be dismissed as a sanction for plaintiff's failure to comply with discovery orders and to appear at a status conference. On December 30, 2009 – over 13 years after this action was dismissed but less than two months after Judge Sifton passed away – plaintiff Mohammed Saharan Bey, proceeding *pro se*, filed an ambiguous and internally inconsistent motion which appears to seek relief from the final judgment in this case. For the reasons set forth below, this Court will, in an abundance of caution, grant plaintiff leave to amend his motion. Defendants need not respond to plaintiff's December 30, 2009, submission unless and until plaintiff files and serves the amended motion.

### BACKGROUND

    In May 1994, plaintiff commenced this action pursuant to 42 U.S.C. § 1983, against the State of New York, the City of New York, the New York City Police Department (the "NYPD"), and several police officers employed by the NYPD (the "Police Officers"). Plaintiff's complaint alleged, *inter alia*, that plaintiff was "a delegate member of the 'Moorish Movement,' known as the Moorish Science Temple of America" (Complaint at ¶ 4), and that this status afforded

plaintiff "special rights" (*Id.* at ¶ 9). Although the complaint did not specify the "special rights," it alleged that plaintiff affixed "'Moorish Movement' identification plates" to his automobile (*id.* at ¶ 8) and otherwise implied that he expected to receive diplomatic immunity.

Defendants apparently did not recognize plaintiff's immunity. According to the complaint, they repeatedly ticketed plaintiff's automobile, unlawfully "confiscated" his vehicles, and falsely imprisoned him on two occasions. On one of these occasions, three of the Police Officers allegedly "imprisoned Plaintiff for more than two hours at a McDonald's restaurant ... claiming that Plaintiff had violated various sections of the vehicle and traffic law – despite Plaintiff's proof of his membership in the Moorish Movement" (*Id.* at ¶ 7).

In August 1994, the City of New York, the NYPD, and some of the Police Officers moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim. In a Memorandum and Order dated Nov. 22, 1994, Judge Charles P. Sifton granted the motion with respect to the City of New York and the NYPD, but denied the motion with respect to the remaining defendants (*Bey v. Rose*, CV-94-2489 (CPS), slip op. at 1 (E.D.N.Y. Nov. 22, 1994)). Judge Sifton noted, however, that "[d]iplomatic status is not accorded to participants in the 'Moorish Movement'" and that "[w]ithout diplomatic immunity, plaintiff must follow federal, state, municipal laws, whatever his citizenship" (*Id.* at 4).

Thereafter, plaintiff's interest in this action began to wane. On December 12, 1995, at a status conference before Magistrate Judge Gold, plaintiff "expressed uncertainty" about his desire to continue the action (Order of M.J. Steven M. Gold, dated Dec. 28, 1995). Magistrate Judge Gold orally directed plaintiff to state in writing on or before December 19, 1995, whether he intend to proceed with the case (*Id.*). When plaintiff failed to comply with that directive,

Magistrate Judge Gold issued a second, written order, extending plaintiff's time to respond to January 12, 1996, but warning plaintiff that he would recommend that the case be dismissed with prejudice for failure to prosecute if plaintiff failed to comply with the order. *Id.*

The record does not indicate whether plaintiff ever complied with this written order. Yet, this Court notes that Magistrate Judge Gold did not recommend dismissal and that plaintiff appeared in person at a March 4, 1996, status conference. During that conference, defendants' counsel complained that plaintiff had not responded to interrogatories and document requests despite having received copies of them on two separate occasions (Transcript of Mar. 4, 1996, Status Conf. at 6). Magistrate Judge Gold directed defendants' counsel to give plaintiff one "final copy" of the discovery requests, and directed plaintiff to answer those requests within two weeks of his receipt of them. *Id.*

By letter dated April 17, 1996, defendants apprised Magistrate Judge Gold that plaintiff had still to serve complete answers to the discovery requests. On April 18, 1996, Magistrate Judge Gold issued an order directing plaintiff to file a response to the defendants' April 17, 1996, letter by May 3, 1996. Plaintiff did not comply. Magistrate Judge Gold then issued a second order, dated May 10, 1996, directing plaintiff to respond to defendants' discovery requests by May 29, 1996. That order specifically warned plaintiff that his failure to comply would result in a recommendation that the action be dismissed with prejudice (Order of M.J. Steven M. Gold, dated May 29, 1996, at 1).

Plaintiff not only failed to comply, but failed to appear at the next scheduled status conference on June 20, 1996. The next day, Magistrate Judge Gold issued a report and recommendation (the "R&R") recommending that this action "be dismissed pursuant to Rules

3

16(f) and 37(b)(2) of the Federal Rules of Civil Procedure and General Rule 5(b) of the Joint Rules of the United States District Courts of the Southern and Eastern Districts of New York, unless plaintiff submit[ted] the required discovery responses, together with an explanation for his failure to appear on June 20, 1996, within the time to appeal from [the] report and recommendation" (R&R at 2). The R&R specifically advised plaintiff that objections to the R&R had to be filed no later than July 10, 1996, and that "[f]ailure to file timely objections may waive the right to appeal the District Court's order" (*Id.*).

Plaintiff nonetheless failed to object or otherwise respond to this R&R. In late July 1996, Judge Sifton adopted the R&R and dismissed plaintiff's action pursuant to Fed. R. Civ. P. 16(f) and 37(b)(2) and General Rule 5(b) of the Joint Rules of the United States District Courts of the Southern and Eastern Districts of New York.

### *Plaintiff's Motion*

On December 30, 2009 – more than 13 years after judgment was entered in this case – plaintiff filed the instant motion. This motion consists of three pages, including an affirmation of service. The first page is a completed notice of motion form, on which plaintiff indicates that he intends to move "for an order pursuant to Rule 440 CRA of the Federal Rules of Civil Procedure granting compensation for the violation of [his] civil rights, abridging [his] rights, pain and suffering and loss of wages." Although the notice of motion makes no mention of Judge Sifton's June 1996 order or the R&R, plaintiff has written "reconsideration" next to the heading, "Notice of Motion."

The second page of plaintiff's motion consists of a form affidavit, in which plaintiff states that he is moving "to reopen [his] case against said defendants." These defendants are mentioned

4

only in the caption of the affidavit, which lists them as Richard Rose, Richard Garcia and John Rose. In that portion of the form affidavit which prompts plaintiff to state "[t]he reason why [he is] entitled to the relief [he] seek[s]," plaintiff states only that he is "seeking compensation for the violation of [his] civil rights, abridging [his] rights, pain and suffering and loss of wages."

## DISCUSSION

Plaintiff's motion, as currently drafted, is so ambiguous and internally inconsistent as to defy easy characterization. The heading on the notice of motion implies that it is a motion for "reconsideration." However, neither the notice of motion nor the affidavit attached thereto contains any reference to Judge Sifton's July 1996 order, Magistrate Judge Gold's June 20, 1996, R&R, or Fed. R. Civ. P. 60(b). Rather, the affidavit in support of the motion states that plaintiff is seeking merely to "reopen" his case. In addition, plaintiff's motion papers do not state any facts whatsoever in support of the motion.

In light of plaintiff's *pro se* status, and the fairly complex procedural posture of this case, this Court is reluctant to rule on plaintiff's motion at this juncture. Instead, this Court will explain the manner in which it construes plaintiff's submission, and grant plaintiff permission to amend his motion.

Plaintiff has two substantial hurdles to overcome in his efforts to re-open this case. First, plaintiff failed to file a timely objection to the R&R, despite Magistrate Judge Gold's warning that "[f]ailure to file timely objections may waive the right to appeal the District Court's order." R&R at 2. The Second Circuit has adopted a non-jurisdictional rule that "failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object."

5

*United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997). However, this rule is non-jurisdictional, and its violation may be excused in the interests of justice. *Id.* at 39.

Second, judgment has already been entered in this case. Rule 60(b) of the Federal Rules of Civil Procedure provides that "[o]n motion and just terms, the court may relieve a party ... from a final judgment ... for ... any ... reason that justifies relief." However, "[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). Motions pursuant to Rule 60(b) are "generally ... denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

In this case, plaintiff's motion papers do not suggest that Magistrate Judge Gold overlooked any controlling decisions or facts in recommending that plaintiff's action be dismissed as a sanction for his failure to comply with discovery orders and to appear at a pre-trial conference. Indeed, this Court notes that Fed. R. Civ. P. 16(f)(1)(A) and (C) and 37(b)(2)(A)(v) both authorize imposition of this sanction and that plaintiff repeatedly disregarded Magistrate Judge Gold's orders. Plaintiff's motion papers also do not explain why it would be in the interests of justice to permit plaintiff to advance objections to the R&R at this very late date. Nonetheless, in light of plaintiff's *pro se* status and in an abundance of caution, this Court will grant plaintiff leave to amend his motion to show 1) what facts or controlling law Magistrate Judge Gold overlooked in his June 20, 1996, R&R and 2) why it would be in the interests of justice to excuse plaintiff's failure to timely object to this R&R.

## CONCLUSION

Plaintiff shall have until February 15, 2010, in which to file amended motion papers and to serve those motion papers, via first-class mail, upon the New York City Law Department. If plaintiff fails to amend his motion within the time allowed, the motion will be denied for the reasons set forth in this Memorandum and Order. Defendants need not respond to plaintiff's motion unless and until plaintiff files and serves his amended motion.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: January 14, 2010
      Brooklyn, New York